FILED by [illegible] D.C.

OCT 11 2011

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

**UNITED STATES' DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

**CASE NUMBER: 11-CV-23682-COOKE/TURNOFF**

CHUKWUMA E AZUBUKO
Plaintiff

V

JUDGE MARK S COVEN – IN INDIVIDUAL AND OFFICIAL CAPACITIES

ASSISTANT ATTORNEY GENERAL SARAH M JOSS – IN INDIVIDUAL AND OFFICIAL CAPACTIES

ASSISTANT ATTORNEY GENERAL DAVID HARTNAGEL – IN INDIVIDUAL AND OFFICIAL CAPACITIES

ASSISTANT CORPORATE COUNSEL MICHELLE K HINKLEY – IN INDIVIDUAL AND OFFICIAL CAPACITIES

ATTORNEY STEPHEN C PFAFF – IN INDIVIDUAL AND OFFICIAL CAPACITIES
Defendants

**COMPLAINT**

**INTRODUCTION**

The Plaintiff was sued by his landlord on April 19th – 2011 for non-payment of rent. Consequently, the Plaintiff filed third party practice in keeping with relevant Massachusetts' Rule of Civil Procedure. [**Exhibits 1 and 2**] Central to the composition of Exhibit 2 and the roles the Defendants played; it really defied logic that they elected to living life in Jezebel-like or out-Herod Herod manners. They were educated, but learnings did not occur [in all modesty and should not be deemed as a verbal ejaculation] Central to interactions, they manifested desiderata of intellectual humility, intellectual courage and faith-to-reasons. More, the Defendants' education implicitly or utterly lacked ethics hence their Talibanistic propensities towards the Plaintiff's third party practice. Job's comforter, indeed! To them, administration of justice should be without human face. They knew not the meaning of *Cedant arma togae*.[1] The Plaintiff would like to know who breast-fed them if they were breast-fed? Indeed, "You know Hercules by his foot." The third party practice had four defendants. The names of the defendants were as shown on Exhibit 2 for clarity. Massachusetts and City of Boston circumvented submission of Answers as had been the rule. On the motion of the first Defendant – City of Everett - vis-à-vis Exhibit 2, there was a hearing. The first Defendant originated a bogus, boyish, preposterous and unprofessional *ration-decidendi* and

[1] "Let violence give place to law."



exonerated firstly three Defendants except the City of Boston. [**See Exhibit 2**] Then, on September 21st – 2011 there was a hearing on the motion of the City of Boston after being defaulted on a hearing on August 3rd – 2011. The first Defendant originated another queer *ratio-decidendi*. [**Exhibits 3 and 4**] Careful review of Exhibit 3 would reveal the scope of unusual cruelty and deliberate indifference the first Defendant approached jurisprudence with. He was a rot to the judiciary central to the Plaintiff's experiences with him. To him, the rule of law necessitated no respect! After the first exoneration of the first three Defendants, the Plaintiff filed MRCP 60(b) – relief from judgment or order – and in the course of the hearing, the Plaintiff told the first Defendant that there was nothing in the Civil Rights Acts (Reconstruction), which justified statute of limitations as well as 42 USC Section 1983. The first Defendant's response was thus: "That is federal law." The Plaintiff was electrified vis-à-vis the response. The oath of office provided for defending, protecting and upholding the United States' law and the law of Commonwealth of Massachusetts. Only in extraordinary circumstances, they would not be separated and if separated, the former law prevailed mostly. The Plaintiff pointed out the colossal defects to his jurisprudence and he jerked up from jam packed courtroom and rattled out thus: "This is what an appeal for." Then, on September 21st – 2011 there was a hearing on the City of Boston's Motion to dismiss and the fourth Defendant aimed at playing to the gallery, thus "Mr. Azubuko, you said Judge Coven abused his oath of office." The fourth Defendant was more interested on a remark of the Plaintiff, which had no motion than the motion to remove default, which she was allowed to amend verbally. Originally, her motion was to dismiss. It should be noted that the first Defendant did not send out default order notice to the City of Boston as agreed upon on August 3rd – 2011 case management conference. However, the first Defendant did not preside over the hearing; it was a Deputy Clerk-Magistrate, who presided. Then, on September 14, there was a hearing on the City of Boston Motion to Dismiss and the first Defendant was not at the court on that day. Another nice female Caucasian judge presided, but refrained from meddling with the case for not understanding the case's history. The fourth Defendant and Plaintiff were waiting for a third call, which a Deputy Clerk-Magistrate came and informed the Plaintiff that the first Defendant would be hearing the case on September 21st and the hearing culminated into another bizarre order – Exhibit 4. The gist of the lawsuit, which the first Defendant wobbled over knowingly centered on "interference with advantageous contractual or business relationship" or "tortuous interference."

Importantly, the case should not sound like a Latin to the first Defendant, so as to compromise judicial integrity steeply and irresponsibly. The gist of the Plaintiff's third party practice was cognizable in Massachusetts from time immemorial. [***Quock Walker v. Jennison v. Caldwells*** (1781)] [**Exhibit 5**] To the first Defendant, the Plaintiff came to him to preside over a case, with virgin or unprecedented legal doctrine. With candor in communications, it was not so! Massachusetts' Courts had plethora of



precedents on tortious interference. [***Blackstone v. Cashman***, 448 Mass. 256, 860 N.E.2d … (2007); ***Bray v. Cmty. Newsp. Co.***, 67 Mass. App. Ct. (2006); ***United Truck Leasing Corp. v. Geltman*** (1990)] With facts, the Plaintiff could gleefully asked: "How large is large" to the Defendants. Consciously, they would not proffer any answer for indelible guilty feelings. To them, feelings meant thinkings! It should not be so, because life could be likened to Massachusetts' Turnpike and no sane wo/man should cross it with closed eyes – on more scores than one, one should look before leaping. Glory, *eggshell skull* rule – one being held responsible for her/his in/direct action/s – was a cognizable law in Massachusetts civilly and criminally. 'What will the Plaintiff say and what will he ignore?'

The commissions and omissions of the Defendants would be established graphically *infra* or below. The Plaintiff would not include them if they did not violate the law. Besides, the Plaintiff did not include Attorney Joslin Murphy in the Complaint: she represented Town of Brookline in the Plaintiff's third party practice. She only tried to distort procedural law – service of process - but the Plaintiff would not take umbrage at that, at all. Sometimes, "Homer nods." The Plaintiff was not looking for someone to sue; the Plaintiff embarked on litigation when there existed utterly communications breakdown or insensitivity in the face of deprivation of property and liberty interests. It was proverbial that "Equity aids the vigilant, not those who slumber on their rights" amongst others. Hopefully, precious time would not be moon away harping on judicial immunity these and those. Glory, Article III Section 2 made no such provision. Law never existed axiomatically or based on feelings and not thinkings. It was irrefutable that 11th Amendment made no provision of that too -- absolute or qualified. It encompassed "Suits Against State Officials," "Tort Action Against State Officials" and "Congressional Withdrawal of Immunity." S/he who sued can be sued too.

**PARTIES**

The Plaintiff resided in Boston – Massachusetts – for upwards of 26-year. Within the period, the Plaintiff engaged on many mundane jobs and in all modesty, studying locally, nationally and internationally. The Plaintiff worked for the Boston's Public Schools as a [substitute] teacher for about 14-year. The contract was dubious terminated in 2005-2006 academic years despite verbal agreement to re-hire the Plaintiff, which flew from a hearing. Characteristically, the City of Boston reneged. That caused the Plaintiff to be self-employed thus transporter. Sadly or as luck would have it, that came to an abrupt end in July – 2010 owing to unconstitutional and criminal revocation of the Plaintiff's [Massachusetts issued] Class D driving license with an option of road safety retraining, which the Plaintiff rejected. The Plaintiff's license represented him and if it were bastardized, the Plaintiff would not acquiesce on that sheepishly or like a moronic child or a zombie. The Plaintiff would like his license to be reactivated without the nonsensical fault-findings, which were no fault of the Plaintiff. Indeed, the Plaintiff was not crying for the moon, at all. The Plaintiff's contact address would be as designated below. The first Defendant was a

judge at Massachusetts' Quincy District Court with address as One Dennis Ryan Parkway, Quincy – MA 02169. For the proceedings, the more preferred address would be the one of Massachusetts' Attorney General – One Ashburton Place, Government Bureau, Boston – MA 02108. The second Defendant worked as an Assistant Attorney General and her address would be same as the preferred address for the first Defendant. Those applied to the third Defendant too. The fourth Defendant worked as an attorney for the City of Boston. Her contact address would be Boston City Hall, Law Department – Room 615, Boston – MA 02201. The fifth Defendant was an attorney and a partner at LOUISON, COSTELLO, CONDON & PFAFF. His contact address would be 101 Summer Street, Boston – MA 02110.

**JURISDICTION**

The Court had jurisdiction on constitutional, statutory and procedural bases. [Article III Section 2; First Amendment; Fifth Amendment; Eight Amendment; 13th Amendment; 14th Amendment; 15 USC Sections 1, 4, 7, 9, 12, 13, 15, 22 and 24; 18 USC Sections 4, 241, 242, 245, <u>249</u>, 1341, 1349, 1505, 1509, 1621, 1961, 2340, 3631 and 14141; 28 USC Sections 1331, 1343(3), 1357, 1361, 1367 and <u>2505</u>; 42 USC Sections 1981(b)-88; FRCP 4(e) …; The Universal Declaration of Human Rights (1948)] The invaluability of Massachusetts' law would not be over-emphasized. [Mass. Const. – Preamble – Sec. Par.; Arts. VI, VII, X, XI and XIV; MGLc 12 Sections 11H-11J; MGLc 151B; MGLc 249 Section 9; MGLc 258 Section 10; MGLc 258E]

**VENUE**

Venue superfluously right too! [15 USC Sections 4, 12 and 22; 28 USC Section 1349(d); Clayton Act Section 12 – **"Expanded Venue Intended"]** More, what ought to exist primarily was jurisdiction and venue was secondary hence the reticence of Article III on it. These would be the bases for the head.

**01) DEPRIVATION OF WELL-ESTABLISHED CONSTITUTIONAL RIGHTS**

The Defendants aided and abetted the deprivation of the Plaintiff near-life, liberty and property interests. To them, equity would complete an imperfect gift! Those were inalienable rights and the Defendants thwarted or discouraged prevalence of Equal Protection and Due Process Clauses in/directly. Succinctly, those were irreducible minimum constitutional rights in United States and the world over *ceteris paribus*! A few excerpts on constitutional rights read thus:

"Constitutional 'rights' would be of little value if they could be indirectly denied." [***Gomillion v. Lightfoot***, 364 U.S. 155 (1966); ***Smith v. Allwright***, 321 U.S. 649 (1944)]

"There can be no sanction or penalty imposed upon one because of his exercise of constitutional rights. [***Sherar v. Cullen***, 481 F.2d 946 (1973)]

"The claim and exercise of Constitution right cannot be converted into a crime"… "denial of them would be a denial of due process of law." [***Simmons v. United States***, 390 U.S. 377 (1968)]



**02) NEGLIGENCE**

On that, the Plaintiff would define negligence according to Restatement of Torts, Second Edition, Volume 3 Section 16.1 by Harper, James and Gray, thus:

"Negligence is conduct, which fall below the standard established by law for protection of others against unreasonable risk of harm. State of mind of indifference or inadvertence must exist. Negligence resulted from ignorance, stupidity, bad judgment, timidity or forgetfulness. It also resulted from deficiencies in knowledge, memory, observation, imagination, foresight, intelligence, judgment, quickness of reaction, deliberation, coolness, determination and courage. Constitution of negligence must reflect "voluntary" conduct – conscious manifestation of the actor's will."

**03) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED)**

The Defendants' conduct underscored roundly the sub-head too. Writing much on it would be time-wasting individually and collectively. The Plaintiff knew what the Defendants drove at – *unjust enrichment*. The law provided against *unconscionability* or commercial immorality too. The sub-head was also known as "tort of outrage" in some jurisdiction. The malicious citations and prosecutions were not without negative spill-over effects by some corrupt Massachusetts and City of Boston's officials. In essence, the malicious citations and prosecutions triggered [off] extreme emotional distress to the Plaintiff unquestionably. The elements existed - "intentional or reckless act," "extreme and outrageous conduct," "in public," *et cetera*.

**04) "MISPRISION OF FELONY" [18 USC SECTION 4]**

The first four Defendants knew very well that a Boston's Police Officer – Antonio DiMaggio – issued the Plaintiff a citation when the Plaintiff had no encounter with him whatsoever. It was known to the fifth Defendant that City of Everett Police Officer issued the Plaintiff a citation for an unsuccessful over-taking. Massachusetts' law recognized over-taking of another vehicle when most seasonable. To him, statute of limitations prevented the Plaintiff from using the court and he knew very well that statute of limitations had been tollable by *continuing violations*. He heard what he wanted to hear and saw what he wanted to see. He closed his eyes at the law, but the self-same law would open his eyes. The Defendants closed their eyes at the law and argued for continued revocation of the Plaintiff's Class D license. What an effrontery and vulturic propensities. That typified "Thus passes away the glory of the world." They were educated without ethics. For that, the Plaintiff would like to know who breastfed them if they were breast-fed, at all. They ought to give law human face, but they girlishly and boyishly failed to do so for in/explicable reason/s. Well, man and not God will be guilty.' The excerpts on the sub-head justified the Plaintiff's stance, thus:

"§ 4. Misprision of felony

Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in



civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both."

**05)   "CONSPIRACY AGAINST RIGHTS" [18 USC SECTION 242]**

The Plaintiff had nothing to add or subtract vis-à-vis the sub-head. Its shortened excerpts read:

"This statute makes it unlawful for two or more persons to conspire to injure, oppress, threaten, or intimidate any person of any state, territory or district in the free exercise or enjoyment of any right or privilege secured to him/her by the Constitution or the laws of the United States, (or because of his/her having exercised the same)."

"It further makes it unlawful for two or more persons to go in disguise on the highway or on the premises of another with the intent to prevent or hinder his/her free exercise or enjoyment of any rights so secured."

**06)   "DEPRIVATION OF RIGHTS UNDER COLOR OF LAW" [18 USC SECTION 245]**

The sub-head's truncated excerpts read:

"This statute makes it a crime for any person acting under color of law, statute, ordinance, regulation, or custom to willfully deprive or cause to be deprived from any person those rights, privileges, or immunities secured or protected by the Constitution and laws of the U.S."

"This law further prohibits a person acting under color of law, statute, ordinance, regulation or custom to willfully subject or cause to be subjected any person to different punishments, pains, or penalties, than those prescribed for punishment of citizens on account of such person being an alien or by reason of his/her color or race."

**07)   "HATE CRIMES PREVENTION ACT" [18 USC SECTION 249]**

The Plaintiff would not particularize on the sub-head. Its shortened excerpt read thus:

"This statute makes it unlawful to willfully cause bodily injury—or attempting to do so with fire, firearm, or other dangerous weapon—when 1) the crime was committed because of the actual or perceived race, color, religion, national origin of any person, or 2) the crime was committed because of the actual or perceived religion, national origin, gender, sexual orientation, gender identity, or disability of any person and the crime affected interstate or foreign commerce or occurred within federal special maritime and territorial jurisdiction."

Sincerely, the sub-head applied squarely to [second and] third Defendant/s. Their submissions to the first Defendant spoke for itself, though not exhibited; if they disputed the Plaintiff's stance, probative evidence would be tendered majestically.



**08)   DEFENDANT'S *ULTRA VIRES* CONDUCT OR *QUO WARRANTO*[2]**

The first Defendant did not act in keeping with pronounced Massachusetts Code of Judicial Conduct. His *ratio-decidendi* for dismissal were boyish and aberration. He had every opportunity for self-corrections upon being acquainted to about his abuse of his oath of office, but he elected to act like a bully and not in manners, which justified a profession associated with, honorable. Factly, he elected to act ignorantly! He knew not the maxims associated with equity, thus: "Equity regards done what ought to be done," "Equity delights to do justice and not by halves," "Equity will not complete an imperfect gift," "Equity will not allow a trust to fail for want of a trustee," "Equity will not allow a statute to be used as a cloak for fraud" amongst others. Indeed, Exhibits 1-2 spoke for themselves. The first Defendant elected to act corruptly with impunity. At Plaintiff's Rule 60(b) hearing, he rattled out thus: 'I don't care' and 'That is a federal law.' The latter assertion associated with letting him know that Section 1983 associated with no statute of limitations. His *ratio-decidendi* for dismissals underscored bottomlessly preposterously his mindset towards jurisprudence. Indeed, his mountainous disrespect to the rule of law justified his equation with a congenital hypocrite or two sons of Priest Eli at Temple Shiloh. He lacked trust, indeed or conducted himself as a blank slate and anybody could write on him. Central to the manners he dealt with the Plaintiff's case, he should resign. He brought mountainous shame to the judiciary. He knew not the meanings of intellectual courage, intellectual humility and faith-to-reasons. The Defendant in question acted callously, discriminatorily and insensitively. He really needed to take a course on "Socio-cultural Perspectives" or multiculturalism at the University of Massachusetts – Boston – College of Education. He woefully failed to act like an appropriate adult. His conduct was reminiscent of a maxim – "An adult who abuse the soup." His "I don't remark" remark lent itself to many negative conclusions. Shame on him, indeed! He should not write justice after his name, but injustice. Factly, he was an incubator for injustice, at all material times. The Plaintiff regretted the assignment of his case to him. He manifested no critical and creative thinkings as a justice. With the eyes, one would know ripped okra. The Plaintiff would not be in the dilemma he found himself if Judge Mary A. Orfanello had been entrusted with the case. She presided over the case and yielded to the first Defendant on September 14th – 2011. Disinterestedly, she was a good judge. She approached jurisprudence with human face, indeed! The first Defendant's approaches were anachronistic, condemnable and discriminatory.

---

[2] Latin for: (Medieval Latin for "by what warrant?") is a prerogative writ requiring the person to whom it is directed to show what authority they have for exercising some right or power (or "franchise") they claim to hold. [Wikipedia]



**09) NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

Central to the Defendants' professional negligence, the Plaintiff brooded endlessly on being evicted with his family members. The Plaintiff would not like to relive such experience and it flew from abuse of process too or gross or crass disrespect of the law. The lawsuit for that was ongoing.

**10) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

The Defendants' conduct underscored the sub-head superfluously and should not be dissociated from *obstruction of justice*, but irrefutably unlawful. Such act was not in keeping with judicial neutrality or universally acceptable jurisprudence methodology or principles. The first Defendant made up his mind life Pharaoh to compromise the maxim of "Honor to one who earns it." He elected to ignore the law bottomlessly insouciantly. He needed a permanent restraining order; he was a threat to justice. His Oedipus approaches to justice thunderously cried for attention. He really disappointed the Plaintiff immeasurably! The Defendants knew not that the law provided for "For those in misery, perhaps better things will follow" and they luxuriated in its distortion for satisfaction of their vulturic and inordinate ambitions.

**12) DELIBERATE INDIFFERENCE**

The Defendants knew what they were driving at under the color of law. They concertedly unquestionably denied the Plaintiff his well-established constitutional rights implicitly. That was unlawful in relationship to Massachusetts' and United States' law as painstakingly spelt out *supra*. Its excerpt read thus:

"In ***Hope v. Pelzer***, 536 U.S. 730 (2002), the United States Supreme Court ruled that the defense of qualified immunity, under which government actors may not be sued for actions they take in connection with their offices, did not apply to a suit challenging the Alabama Department of Corrections's use of the "hitching post", a punishment whereby inmates were immobilized for long periods of time. The former prisoner who had lost his suit in the lower courts, was therefore allowed to go forward with his case."

**13) UNUSUAL CRUELTY [EIGHT AMENDMENT]**

The manners the Defendants dealt with the case's surrounding circumstances underscored the head. They evaded Answer to the Plaintiff's third party practice. If they had had done so, perhaps, the first Defendant would not have gotten hold of the wrong end of the stick thus indelible shameful and irresponsible jurisprudence. Well, they deemed it advisable to kiss the Plaintiff and they had to arrange for the wedding metaphorically – eggshell skull rule – "One is responsible for whatever flew from her/his action/s in/directly." The Plaintiff was not the father or author of the sub head.

**14) MATERIAL MISREPRESENTATION OF FACTS**

The Defendants condescension justified the sub-head obviously. The sub-head amongst others qualified for strict liabilities vis-à-vis the conduct of the Defendants on the case entrusted with the first Defendant and he presided over it mountainously corruptly. They put their whimsicalities before the law. To them, administration of justice should be approached on the bases of "Holier than thou" and "From God the



King, and from the King the law." That markedly did not dovetail with democratic dispensation. It represented ministers of justice with two-tongue-in-one-mouth or egregious hypocrisy. The money the Plaintiff and his landlord expended on the case, which the first Defendant wobbled vis-à-vis the connivance of other Defendants represented *total failure of consideration* – nothing rewarding came from it or was completely wasted.

**15) "FAILURE TO TRAIN AS A THEORY OF SECTION 1983 CLAIMS ...."**

The queer or deceitful Defendants' legal know-how condemned the Plaintiff to numberless and immeasurable constitution torts violations. A shortened excerpt on the sub-head read, thus:

"Title 42 U.S.C. Â§ 1983 has developed to the point that it provides a remedy for the violation of federally-protected rights by governments and its employees. That was not always the case, however. Enacted in 1871, the statute fell into almost a century of disuse, as the Supreme Court construed its reach very narrowly. See Civil Rights Cases, 109 U.S. 3, 3 S. Ct. 18 (1883). Then, in 1961, the Supreme Court issued its landmark decision of Monroe v. Pape, 365 U.S. 167, 81 S. Ct. 473, (1961) in which Justice Douglas, writing for the majority, determined that the policy behind the statute was "to afford a federal right in federal courts because . . . claims of citizens to the enjoyment of rights, privileges, and immunities guaranteed by the Fourteenth Amendment might be denied by state agencies." 365 U.S. at 180. Monroe thus signaled the resurrection of Â§ 1983, and the role and influence of the federal courts in enforcing civil rights and liberties has never been the same since."

**16) DEFENDANT AS A "TRESPASSERS OF THE LAW"**

That applied to all the Defendants. The sub-head's shortened excerpt read, thus:

"Under Federal law which is applicable to all states, the U.S. Supreme Court stated that if a court is without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void; and form no bar to a recovery sought, even prior to a reversal in opposition to them. They constitute no justification; and all persons concerned n executing such judgments or sentences, are considered, in law, as trespassers." [***Elliot v. Piersol***, 2 Pet. 438, 340, 26 U.S. 328, 340 (1828)]

**17) DENIAL OF EQUAL RIGHTS UNDER LAW" [42 USC SECTION 1981**

The Plaintiff was not the author of the sub-head. The Defendants knew that they acted *ultra vires* or in manners, which typified lack of "Prudential considerations," "Exclusion of extra-constitutional tests," "Presumption of constitutionality" amongst others. They equally disrespected Massachusetts' Code of Judicial Conduct (for Judges) -and Massachusetts Rules of Professional Conduct (for Attorneys). 'Of course, if one peed or urinated on her/his bed, one will sleep on the floor.'

**18) "FEDERALLY PROTECTED ACTIVITIES" [18 USC SECTION 245]**

The sub-head applied to third Defendant mainly. To make mockery of one for exercising his/her constitutional rights lent itself to negative conclusion. Cajoling the first Defendant to use it as a benchmark for dismissal of the Plaintiff's case was unprofessional and insensitive. The so-called vexatious litigations underscored ignorance; the preferred judicial system in United States was adversarial



and not inquisitorial. If the judiciary disappointed the Plaintiff, it never meant that the Plaintiff was a resident of Bedlam or a lunatic. Central to prodigalities of God's love and grace, the Plaintiff considered himself a reasonable person. The Defendant should desist from dancing Macarena at others' funerals or should study at empathy. 'A child on her/his mother's back knows nothing about far distance.' To seek legal solutions to one's socio-economic problems was never criminalized; the Defendant in question should learn to respecting others for their stupidity too. The Defendant's callous, unprofessional and condemnable approach was uncalled for, insidious and invidious. It was babyish too. It had nothing to do with having chilling effect to the First Amendment – freedom of speech. It amounted to *defamation* and should not be considered choicest defense instead of submission of Answer to a Complaint. Whatever he aimed at achieving should be told to the marines! It could be said that his irresponsible and vacuous remark poisoned the first Defendant's mind against understanding that the Plaintiff was entitled to Equal Protection and Due Process Clauses. [14th Amendment] The shortened excerpt on the sub-head read thus:

1) "This statute prohibits willful injury, intimidation, or interference, or attempt to do so, by force or threat of force of any person or class of persons because of their activity as:

a) A voter, or person qualifying to vote...;
b) a participant in any benefit, service, privilege, program, facility, or activity provided or administered by the United States;
c) an applicant for federal employment or an employee by the federal government;
d) a juror or prospective juror in federal court; and ..."

**19) "FRAUD AND SWINDLES" [18 USC SECTION 1341]**

The excerpt on the head justified the Defendants' conduct. It made no sense that the Plaintiff was scheduled for a hearing for a moving violation, which never took place on January 17th - 2008. The Plaintiff paid $20.00 for Clerk-Magistrate hearing and lost irresponsibly, shamefully, inhumanly, exploitatively and deceitfully. The Plaintiff appealed on payment of $50.00 and won: the Plaintiff was still found "Responsible" by Deputy Clerk Joseph Amos at the Roxbury's District Court. The Plaintiff returned to the self-same court for correction of the alleged mistake timeously on July 9th - 2008. Ms. Martinez wobbled over the case earlier provided the necessary help or allegedly corrected the negligence since she understood the surrounding circumstances. With the said court's embossing stamp, the so-called mistake was allegedly corrected - in July 2008. On August 25th – 2008, the Plaintiff w informed that his registration had been suspended central to the self-same citation, which the Plaintiff believed that he had diligently took care of and associated criminally with Boston Police Officer Antonio DiMaggio. Deceit and corruption at its peak!

On another moving citation, the Plaintiff was not the last person to drive through a yellow light. A Boston's Police Officer pulled the Plaintiff over and allowed others to go scot-free. The Plaintiff pointed



it out to him and he said: "I have noted their numbers and I will send them ticket by the mail." Very evasive, indeed and a legal impossibility! The Plaintiff requested for a hearing on the citation and was never notified. The Boston Municipal Court (Central Division) claimed that she did, but it was a fallacy. Even if she did, Due Process Clause required her to notify the Plaintiff about the hearing by a certified mail just like she would like prospective litigants to return process with probative evidence and not first class mail. She negated that on the Plaintiff notice of hearing and blatantly refused to re-schedule the Plaintiff for a hearing on demand. Under the penalties for perjury, the Plaintiff was in the said court's office and a Caucasian man similarly situated with the Plaintiff was re-scheduled for a missed hearing and sternly warned not to miss it.

Another ticket the Plaintiff was maliciously issued in stark violation of the anti-trust law suffered self-same fate at the Roxbury's District Court. The Plaintiff missed the hearing owing to criminal charges of assault and battery some Massachusetts' and City of Boston's corrupt officials aimed at fobbing off the Plaintiff. The Plaintiff had a hearing at the Massachusetts' Supreme Judicial Court within the period hence the hearing was missed. Less than ten-day, the Plaintiff went to the said court for a re-scheduled hearing in keeping with MRCP 60(b) and an employee at the said court by name Kevin McNulty refused to re-schedule the Plaintiff. That prompted the Plaintiff to return to the said court with Massachusetts' Rule of Civil Procedure booklet to prove beyond doubt that Plaintiff was being discriminated for financial exploitation. On showing him the basis for the Plaintiff's demand, he rattled out thus: "This is how we do things here." Strange, indeed and in stark violations of the law! Excerpts on the sub-head would be helpful and useful thus:

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both."

**20) "PERJURY GENERAL" [18 USC SECTION 1621]**

The Defendants conduct underscored the head. Its shortened excerpts read:

"§ 1621. Perjury generally

Whoever—



**(1)** having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or **(2)** in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true;

is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both. This section is applicable whether the statement or subscription is made within or without the United States."

**21) "RACKETEERING ACTIVITIES" [18 USC SECTION 1961]**

The sub-head's shortened excerpt also read, thus:

As used in this chapter –
(1)"racketeering activity" means (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery), section 224 (relating to sports bribery), sections 471, 472, and 473 (relating to counterfeiting), section 659 (relating to theft from interstate shipment) if the act indictable under section 659 is felonious, section 664 (relating to embezzlement from pension and welfare funds), sections 891-894 (relating to extortionate credit transactions), section 1028 (relating to fraud and related activity in connection with identification documents), section 1029 (relating to fraud and related activity in connection with access devices), section 1084 (relating to the transmission of gambling information), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1344 (relating to financial institution fraud), …"

**22) TORTURE [18 USC SECTION 2340]**

The Plaintiff would not add anything to the sub-head. Its shortened excerpts too read, thus:

"§ 2340. Definitions

As used in this chapter—

**(1)** "torture" means an act committed by a person acting under the color of law specifically intended to inflict severe physical or mental pain or suffering (other than pain or suffering incidental to lawful sanctions) upon another person within his custody or physical control;
**(2)** "severe mental pain or suffering" means the prolonged mental harm caused by or resulting from—
**(A)** the intentional infliction or threatened infliction of severe physical pain or suffering;
…"

**23) "CRIMINALLY INTERFERENCE WITH RIGHT TO FAIR HOUSING" [18 USC SECTION 3631]**

Central to the first Defendant failure to do justice to the head, he left the Plaintiff's landlord with the option of eviction of the Plaintiff. That would be non-existent if the rule of law had prevailed or were duly respected vis-à-vis the oath of office to defending, protecting and upholding the law, at all material times and not selectively, discriminatorily and racistly or on Christmas', New Year's, Easter's, Fourth's *et cetera* Eves. It excerpts would be self-explanatory, thus:



"This statute makes it unlawful for any individual(s), by the use of force or threatened use of force, to injure, intimidate, or interfere with (or attempt to injure, intimidate, or interfere with), any person's housing rights because of that person's race, color, religion, sex, handicap, familial status or national origin. Among those housing rights enumerated in the statute are:

- The sale, purchase, or renting of a dwelling;
- the occupation of a dwelling;
- the financing of a dwelling;
- contracting or negotiating for any of the rights enumerated above.
- applying for or participating in any service, organization, or facility relating to the sale or rental of dwellings.

This statute also makes it unlawful by the use of force or threatened use of force, to injure, intimidate, or interfere with any person who is assisting an individual or class of persons in the exercise of their housing rights.
Punishment varies from a fine of up to $1,000 or imprisonment of up to one year, or both, and if bodily injury results, shall be fined up to $10,000 or imprisoned up to ten years, or both, and if death results, shall be subject to imprisonment for any term of years or for life."

**24) "PATTERN AND PRACTICE" [18 USC SECTION 14141]**

The sub-head's shortened excerpts would suffice, at all material times, thus:

"This civil statute was a provision within the Crime Control Act of 1994 and makes it unlawful for any governmental authority, or agent thereof, or any person acting on behalf of a governmental authority, to engage in a pattern or practice of conduct by law enforcement officers or by officials or employees of any governmental agency with responsibility for the administration of juvenile justice or the incarceration of juveniles that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States."

"Whenever the Attorney General has reasonable cause to believe that a violation has occurred, the Attorney General, for or in the name of the United States, may in a civil action obtain appropriate equitable and declaratory relief to eliminate the pattern or practice. ..."

**[EMERGENCY] RELIEEVES THE PLAINTIFF SOUGHT [FROM THE COURT]**

These would be the relieves:

**01)** The would effusively prayed the Court to order the first Defendant to order Massachusetts' to reactivate the Plaintiff's Class D driving license at no cost to the Plaintiff, at all.

**02)** Expunge from the Plaintiff's driving records some Massachusetts' corrupt officials-induced driving convictions. Firstly, they flew from a false vehicular citation by a Boston Police Officer Antonio DiMaggio. Secondly, negligence of a Massachusetts' Deputy Clerk negligence, thus found the Plaintiff responsible for a case the Plaintiff won on appeal, because Mr. DiMaggio knew his criminal act and did not appear during the hearing and thirdly, the Boston Municipal Court (Central Division) failed to notify the Plaintiff about a hearing deliberately, so as to make more money under default judgment and the Plaintiff requested hearing rescheduling in keeping with Massachusetts' Rule of Civil Procedure 60 and it



was blatantly denied. In short, the last five alleged violations associated with the Plaintiff should be expunged from the Plaintiff's driving record; they were some corrupt Massachusetts' officials-induced. They expected others to obeying the law religiously, but some of them deemed it judicious to flout the law with impunity characteristically, at all material times. They should not be above the law, indeed like to sons of Priest Eli at the Temple of Shiloh. [1st **Samuel 2:12**]

**03)** The Court should issue a permanent injunction against Quincy District Court – where the first Defendant worked never to assign my case with him if need be.

**04)** The first Defendant should be ordered to undergo sensitivity trainings. The University of Massachusetts – Boston – College of Education offered a course entitled "Socio-cultural Perspectives" at her graduate College of Education. It would be a window in the world for the first Defendant with candor in communications and optimum love for mankind. The first Defendant had been paid to committing murder under the color of healing wound. His quality of jurisprudence was heart-rending if what he exposed the Plaintiff to should be a microcosm or a thin end of the wedge. He conducted not himself in manners, which typified association of judgeship with honorable. He [really] bastardized jurisprudence with impunity.

**05)** The Court should order the first Defendant to sanction Defendant number two through five. The violated the law and striking one was "Misprision of felony" amongst others. [18 USC Section 4] The first Defendant dismissed the Plaintiff's motion to sanction Defendants two and three. The first Plaintiff also never decided on the Plaintiff's sanction motion on Defendant four.

**COMPENSATORY AND PUNITIVE DAMAGES**

These would be the bases for the head thus:

| **DEFENDANT'S NUMBER** | **INDIVIDUAL** | **OFFICIAL** | **TOTAL** |
|---|---|---|---|
| 1 | $5m | $6m | $11m |
| 2 | 2m | 2m | 4m |
| 3 | 3m | 3m | 6m |
| 4 | 2m | 6m | 8m |
| 5 | 2m | 4m | 6m |
| TOTAL = | | | **$35m** |

Cost and interest would be excluded!

CHUKWUMA E AZUBUKO
P O Box 171121
Boston – MA 02117
Telephone (617) 265 6291

**Dated in Boston – Massachusetts on Wednesday – October 5th - 2011**

